# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

REGINALD DEVORE CLINTON,      )
                              )
              Plaintiff,      )
                              )
       v.                     )        1:20cv1078
                              )
SGT. SLAGLE, et al.,          )
                              )
              Defendants.     )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on the "Motion to Add Parties" (Docket Entry 21) (the "Motion") filed by Reginald DeVore Clinton (the "Plaintiff"). For the reasons that follow, the Court will deny the Motion.[1]

## BACKGROUND

Plaintiff, a convicted state prisoner (Docket Entry 2 (the "Complaint") at 4),[2] initiated this lawsuit against "Sgt. Slagle" and "Sgt. Campbell" at "Forsyth Correctional [Center]" (id. at 2)

---

[1] For reasons stated in Deberry v. Davis, No. 1:08cv582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010), the undersigned Magistrate Judge will enter an order, rather than a recommendation, as to the Motion. See also Everett v. Prison Health Servs., 412 F. App'x 604, 605 & n.2 (4th Cir. 2011) (explaining that, where the plaintiff "moved for leave to amend her complaint[] . . . to add a state-law claim of medical malpractice," "the magistrate judge denied [that] motion" and the plaintiff "timely objected, thereby preserving the issue for review by the district court," the district court "could not modify or set aside any portion of the magistrate judge's order unless the magistrate judge's decision was 'clearly erroneous or contrary to law'" (citing 28 U.S.C.A. § 636(b)(1)(A) (2006 & Supp. 2010); Fed. R. Civ. P. 72(a))).

[2] Docket Entry page citations utilize the CM/ECF footer's pagination.

for allegedly violating his "[r]ight to receive immediate medical attention when medical issue is reported" and "[c]ruel and unusual punishment by forcing attendance to school while visible swelling and redness of leg is apparent" (id. at 3)[3] for incidents occurring between 8:45 p.m. on May 19, 2019, and 7:15 a.m. on May 21, 2019 (id. at 5), "[a]t Forsyth Correctional [Center]" (id. at 4). More specifically, the Complaint alleges:

> [On May 19, 2019, Plaintiff] "woke up feeling nauseous, shaking with cold chills and experiencing pain in [his] lower left leg." [He] reported this to Defendant Slagle at 8:45 p.m[.] and she replied that these "sym[p]toms were not an emergency" and instructed Plaintiff to fill out a regular sick call. Plaintiff did so and laid back down. He awakened the next morning "with visible swelling in [his] leg and at 7:08 am [he] reported these sym[p]toms to [Defendant] Campbell and showed him [the] leg and told [Defendant Campbell] [he] needed to remain on campus to see the nurse. However, Campbell . . . told Plaintiff to "'Get on the bus or get a write up.'" [Accordingly,] Defendant Slagle violated Plaintiff's rights by not acting after being informed of Plaintiff's need for medical attention and . . . Defendant Campbell violated his rights by forcing him "to attend school by threatening 'get on the bus or get a write-up' while visible swelling and redness o[n Plaintiff's] leg was obvious to any untrained eye." The Complaint is not specific about the events that occurred next or the cause of the issues with Plaintiff's leg. However, the problem . . . resulted in a 21-day stay in the hospital, "[p]ermanent damage and discoloration on [Plaintiff's] lower left leg," "acute kidney disease that now requires medication," wound care, hose, and medical

---

3 For legibility reasons, this Opinion uses standardized capitalization and spelling and omits the word "the" in front of "Plaintiff" in all quotations from the parties' materials.

socks and shoes. Plaintiff also reports "[c]onstant swelling and fluid on [his] lower left leg."
(Docket Entry 3 at 3-4 (certain brackets in original) (citations omitted).) As relief for his claims, Plaintiff seeks "[a]ctual damages," described as the "cost of supplies and medical in [the] future," and "punitive damages," described as "loss of future earning potential and medical deficiency caused by damage to leg." (Docket Entry 2 at 5.)

Reviewing the Complaint under 28 U.S.C. § 1915A, the Court permitted Plaintiff to maintain a claim for deliberate indifference to a serious medical need against Sgt. Campbell, but dismissed Plaintiff's claim against Sgt. Slagle for failure to state a claim upon which relief may be granted. (Docket Entry 6 at 1; see Docket Entry 3 at 1-5.) Thereafter, the Court entered a Scheduling Order specifying that "the parties shall file any motions seeking leave to amend pleadings or to add parties by [September 3, 2021]." (Text Order dated June 23, 2021.) In a filing dated September 1, 2021, Plaintiff asked for an extension of time to request leave to add parties. (See Docket Entry 18 at 1-3.) On September 28, 2021, Plaintiff submitted the Motion (see Docket Entry 21 at 1), apparently seeking to add "Warden Reep; Associate Warden Maynor; SGT. Lutz; Warden Wilde; [and] Associate Warden McMahan" as defendants (Docket Entry 22 at 3).

The Court granted Plaintiff's extension request, deeming the Motion timely. (See Text Order dated Oct. 5, 2021.) Thereafter,

3

in January 2022, Plaintiff filed a letter "formally request[ing] that Warden Wilde, Warden McMahan, Warden Reep[,] and Warden Maynor [be] all added to [the Motion] on the merits of the brief and Motion as well as the continued hinderance, delay, and obstruction of Defendants' duty to supply carbon paper and not retaliate against Plaintiff."  (Docket Entry 24 (the "Supplement") at 2.) Sgt. Campbell opposes Plaintiff's request to add the specified individuals to this lawsuit.  (<u>See</u> Docket Entry 23 at 1-2.)

**DISCUSSION**

**I. Standards**

"[A] court determining whether to grant a motion to amend to join additional [parties] must consider both the general principles of amendment provided by Rule 15(a) [of the Federal Rules of Civil Procedure (the "Rules")] and also the more specific joinder provisions of Rule 20(a)."  <u>Hinson v. Norwest Fin. S.C., Inc.</u>, 239 F.3d 611, 618 (4th Cir. 2001).  As relevant here, Rule 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the [C]ourt's leave.  The [C]ourt should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Under Rule 15, "[i]n the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,

4

futility of amendment, etc. — the leave sought should, as the [R]ules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). Nevertheless, whether or not to grant leave to amend remains within the Court's discretion. Id.[4]

A proposed amendment qualifies as futile if it would not survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. See, e.g., Davison v. Randall, 912 F.3d 666, 690 (4th Cir. 2019), as amended (Jan. 9, 2019) ("'Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards.' Accordingly, [the plaintiff's] proposed amendment was futile if the new claim would not have survived a motion to dismiss under [Rule] 12(b)(6)." (citation omitted)). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of

---

4  "On motion and reasonable notice, the [C]ourt may, on just terms, permit [Plaintiff] to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d); see also Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002) ("A supplemental pleading differs from an amended pleading because it relates to matters occurring subsequent to the filing of the initial complaint."). "This distinction [between amending and supplementing] is of little practical significance, however, because the standards used by [the C]ourt in ruling on a motion to amend or on a motion to supplement are nearly identical. In either situation, leave should be freely granted, and should be denied only where good reason exists . . . ." Franks, 313 F.3d at 198 n.15 (internal quotation marks omitted).

App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted).

When conducting review for legal sufficiency, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Nevertheless, the Court "will not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013) (internal quotation marks omitted); see also Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)). The Court can also "put aside any naked assertions devoid of further factual enhancement." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" cannot "survive a Rule 12(b)(6) motion." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

For its part, Rule 20(a) authorizes joinder of multiple defendants in one action only where "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

7

Fed. R. Civ. P. 20(a)(2) (emphasis added). Assuming satisfaction of those requirements, "Rule 20 gives courts wide discretion concerning the permissive joinder of parties." <u>Aleman v. Chugach Support Servs., Inc.</u>, 485 F.3d 206, 218 n.5 (4th Cir. 2007). Courts should construe Rule 20 "in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes." <u>Id.</u> (internal quotation marks omitted). As such, "[t]he [C]ourt has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." <u>Id.</u> (internal quotation marks omitted).

Furthermore, where, as here, an incarcerated plaintiff seeks joinder of multiple defendants, additional considerations apply. As the United States Court of Appeals for the Seventh Circuit cautioned regarding an inmate's attempt "to join 24 defendants, and approximately 50 distinct claims, in a single suit," a court should question expansive prisoner complaints. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) ("The district court did not question [the plaintiff's] decision to join 24 defendants, and approximately 50 distinct claims, in a single suit. It should have done so."). The Seventh Circuit explained:

> The controlling principle appears in [Rule] 18(a): "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Thus multiple claims

8

against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees — for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

George, 507 F.3d at 607. Courts must guard against an inmate seeking to join multiple defendants in a single suit "not only to save money but also to dodge that rule." Id.; see also id. (opining that "[the plaintiff] hoped that if even 1 of his 50 claims were deemed non-frivolous, he would receive no 'strikes' at all, as opposed to the 49 that would result from making 49 frivolous claims in a batch of 50 suits").

## II. Analysis

As an initial matter, this Court's Local Rules require parties to "attach the proposed amended pleading to [any] motion" seeking leave to amend such pleading. M.D.N.C. LR 15.1. Plaintiff failed to comply with this Local Rule. (See Docket Entries 21-22, 24.) That failure makes discerning the scope of Plaintiff's proposed claims against the proposed new defendants more difficult. Nevertheless, it remains clear that Plaintiff seeks to add five new defendants who work at two different institutions to this lawsuit, challenging actions by these individuals between August 5, 2021, and January 4, 2022. (See, e.g., Docket Entry 22 at 1-13; Docket

Entry 24 at 1-3.) For instance, in the brief in support of the Motion, Plaintiff alleges:

"Plaintiff was housed at Catawba Correctional on [August 5, 2021,] at the time of [the] offense." (Docket Entry 22 at 1.) On August 5, 2021, Plaintiff participated in a meeting with Warden Reep and Assistant Warden Maynor (see id.) regarding his illicit possession of a cell phone (see id. at 6). Warden Reep made certain promises to Plaintiff during this meeting, contingent on Plaintiff admitting his possession of the cell phone and accepting a "restrictive housing punishment." (Id.) However, the "Wardens lied to Plaintiff," including by failing to return him to Catawba Correctional after his restrictive housing sentence and by "recommend[ing] that Plaintiff be demoted," which "was a breach of trust because Plaintiff trusted both Wardens due to prior meetings with both Wardens." (Id. at 7.) The "Wardens' actions w[ere] a breach of duty because both Wardens were aware of Plaintiff's leg injury and the on-going civil litigation for [his] leg injury." (Id.) Additionally:

> SGT. Lutz acted with deliberate and malicious intent when he discarded Plaintiff's self care medical supplies that were clearly labeled Medical Supplies for Leg. These supplies were issued by Novant Health Hospital to self-care for Plaintiff's on-going left leg Cellulitis injury. On [August 5, 2021], after Plaintiff's meeting with Warden Reep and Associate Warden Maynor, SGT. Lutz, under direct order from [the] Wardens, packed all of Plaintiff's property and discarded without listing Plaintiff's self-care medical supply container that was clearly labeled and marked Medical Supplies for Leg. Plaintiff asserts that SGT. Lutz's failure to exercise

10

due care in the performance of his duty assignment to pack Plaintiff's property resulted in a negligent duty legally owed to Plaintiff under the circumstances because SGT. Lutz['s] and both Wardens['] prior knowledge of Plaintiff's leg injury and on-going litigation should have warranted care in [the] handling of Plaintiff's property.

All Defendants' prior knowledge of Plaintiff's leg injury and Plaintiff's on-going civil litigation for leg injury coupled with the fact that Defendants ignored or failed to acknowledge the need to exercise due care in the performance [of the] duty owed to Plaintiff constituted a negligent breach of duty owed to Plaintiff.

(Id. at 4-5 (headings and parenthetical lettering omitted).)

The "Wardens" also "committed a breach of confidentiality" when they disclosed Plaintiff's actions regarding the cell phone and other incidents "to other staff" who told "inmates that Plaintiff was [an] informant." (Id. at 8.) Plaintiff learned about these developments when he "arrived at Craggy [Correctional] on [September 1, 2021,] after [the] restrictive housing sentence supposedly to quarantine prior to being re-housed" and two inmates told Plaintiff that one of the inmates charged for cell phone possession alongside him at Catawba Correctional, Robert Weaver, "was telling people that Plaintiff was a snitch because the officer that transported Weaver from Catawba informed Weaver that Plaintiff revealed the code to [the] phone and told everything on Weaver." (Id.) "However, the Wardens knew and saw at least two others who were in photos and had messages and numbers associated with them [on the cell phone] but failed to charge or discipline them. This

is a complete breach of duty, trust, and confidentiality of [the] Wardens." (Id.)

The actions of "Wardens Reep and Maynor, SGT. Lutz, and Wardens Wilde and McMahan . . . result in retaliatory tactics that equal a campaign of harassment against Plaintiff" (id. at 9), as follows:

> Wardens Reep['s] and Maynor['s] actions were retaliatory in nature because (1) they had prior knowledge of Plaintiff's leg injury and lawsuit pertaining to [his] leg injury and negligence and therefore, Wardens should have exercised due care in their performance of their duties and decision making when dealing with Plaintiff under the circumstances[,] and [the] Wardens['] failure to do so resulted in negligence against Plaintiff and became retaliatory as a result of Wardens (A) punishing some and not all parties involved and (B) instructing Plaintiff to plead guilty and take responsibility and for (C) breaching the agreement to keep the matter at a facility level[,] (D) breaching the confidentiality of Plaintiff[, and] (E) demoting Plaintiff to medium custody when several other inmates with phone charges are still in minimum although Plaintiff qualifies for minimum.
>
> Sgt. Lutz's actions of negligence resulted in retaliatory tactics when Sgt. Lutz discarded all of Plaintiff's medical supplies that were clearly labeled medical supplies for leg and became malicious intent when Sgt. Lutz discarded these items without documenting items on a DC-160 or listing in the report [the] reason for discarding medical supplies although Sgt. Lutz had prior knowledge of Plaintiff's injury and lawsuit for injury but failed to exercise due care when packing Plaintiff's property. This is an Eighth Amendment violation of deliberate indifference that ignored [an] obvious duty to exercise care. Wardens Wilde and McMahan ignored an obvious need to exercise due care with Plaintiff when they ignored, delayed[,] and hindered Plaintiff from being able to effectively communicate and litigate with the courts even after Wardens were warned [in writing] and verbally that Plaintiff was being denied carbon paper, large mailing envelopes[,] and legal pad[] tablets that Plaintiff is unable to purchase because of

12

restrictions imposed on Plaintiff. Continuing to delay and [sic] provide mailing envelopes and legal pads make both Wardens negligent in their duty to Plaintiff and adds more substance to Plaintiff's campaign of harassment.

. . . [T]he aforementioned Defendants' actions or failure to act was a breach of Plaintiff's constitutional right and [Defendants'] conduct was not in accordance with the applicable standard to exercise due care in the performance of the legal duty owed to Plaintiff under the circumstances. Plaintiff argues that Defendants acted with deliberate indifference and ignored or failed to acknowledge an obvious and serious danger when Defendants made the decision to discard Plaintiff's medical supplies, demoted Plaintiff to medium custody when Plaintiff still qualifies as minimum custody, deceived and lied to Plaintiff during [the] meeting with Wardens and Wardens['] acts were a breach of duty, trust[,] and confidentiality when Wardens told Plaintiff during [the] meeting that Wardens would keep the matter at a facility level and protect Plaintiff's confidentiality. When Wardens failed to uphold any part of the agreement they acted with deliberate indifference and ignored an obvious and serious danger to Plaintiff.

Finally, . . . Wardens Reep['s] and Maynor['s] decision to deceive Plaintiff who []trusted Wardens' words due to past involvement and meetings amounts to retaliatory tactics against Plaintiff and as a result of that decision, Plaintiff is receiving undue campaign of harassment in the fact that Plaintiff is being hindered from being able to properly litigate by being denied carbon paper for 13 days after repeated written request and daily verbal request, being placed on restricted draw and unable to purchase legal mailing envelopes[] and legal tablets, being transferred several hours away from Forsyth County where [the] litigation and trial will be held, being unable to effectively use discovery period timeline because of distance and custody level, being denied medical treatment for [his] leg in the fact that sick-call forms have been ignored or discarded and Plaintiff has yet to see the doctor since [his] arrival at th[e Craggy Correctional] facility although Plaintiff has requested to see [a] doctor on sick call forms for the past 2 weeks. This campaign of harassment has caused

13

obvious undue stress on Plaintiff and Plaintiff was recommended and seen by staff psychologist, R. Bruner.

(Id. at 9-12 (citations and headings omitted).)[5]

As relief for these alleged wrongs, Plaintiff asks that the Court:

1. Instruct and direct prison officials in control and custody of Plaintiff to cease and refrain from all retaliatory tactics and any and all forms of hindering Plaintiff's ability to litigate.

2. Transfer Plaintiff to [the] facility closest to Forsyth County or within an hour or less from the trial county to be able to effectively litigate and meet discovery deadlines, depositions[,] and hearings.

3. Instruct and direct prison officials to replace and provide medical supplies needed to care for Plaintiff's injury.

4. Reprimand Wardens Reep and Maynor for their actions and decision against Plaintiff[.]

5. Any other relief the Court deems appropriate[.]

(Id. at 13.)

Additionally, the Supplement states:

Administrative Officials continue to fail to respond to Plaintiff's "repeated request[s] for carbon paper and a copy or

---

5   Plaintiff included various "Craggy Correctional Center Request Form[s]" regarding his requests for, inter alia, carbon paper, mailing envelopes, and legal pads. (See id. at 19-24 (italicization omitted).) The request forms do not mention Wardens Wilde and McMahan in any capacity. (See id.) Instead, to the extent they identify a recipient, Plaintiff directed them to "Harmon" (identified as his case manager) and "Programs," and a "C. Shuping" responded to Plaintiff's first request form, directing him to "Control" for the carbon paper and "Mis[s] Sprinkle" for a notary (id. at 19). (See id. at 19-24.)

list of [Plaintiff's] educational and self help program completions that [he] need[s] in preparation for filing [his] upcoming trial brief." (Docket Entry 24 at 1.) Plaintiff has included "copies of all the request forms [that he] ha[s] sent to all officials named. [He] ha[s] not received any type of reply." (Id.) "The current Administrative Officials continue to ignore the Court and Plaintiff." (Id.) On December 26, 2021, Plaintiff "notified Warden Wilde, Associate Warden McMahan, and two other officials that failure to respond to [his] Fourth Request would result in all request forms [being] mailed to the Presiding Judge with a request to rule in [Plaintiff's] favor to add parties Warden Wilde and Associate Warden McMahan." (Id.)[6]

"[Plaintiff] now formally request[s] that Warden Wilde, Warden McMahan, Warden Reep[,] and Warden Maynor [be] added to [the Motion] on the merits of the brief and Motion as well as the continued hinderance, delay, and obstruction of Defendants' duty to supply carbon paper and not retaliate against Plaintiff." (Id. at 2.) "These ongoing retaliation attempts have increased

_____

6 Plaintiff included four Craggy Correctional request forms in the Supplement. (See id. at 4-7.) Plaintiff addressed the first two request forms to "Programs" (id. at 4-5) and a third request form to "Warden Wilde, Associate Warden McMahan, Programs Supervisor Canup, [and] Case Manager Gray" (id. at 6); those request forms all involved requests for verifications of educational, self-help, and vocational programs that Plaintiff has completed (see id. at 4-6). The final request form, addressed to "Control/Programs Director [and] McMahan," asked for carbon paper. (Id. at 7.)

15

dramatically." (Id.) At approximately midnight on January 4, 2022, Plaintiff "was transferred to Foothills Restrictive housing and denied all of [his] legal paperwork. When [he] enquired why [he] was [t]here[, he] was told Administrative Decision. [He] then wrote th[at] facility's unit manager Webb, explaining [his] need to receive [his] legal material and [he] also wrote a grievance." (Id.) On January 6, 2022, the day that Plaintiff wrote the Supplement, unit manager Webb brought Plaintiff his "legal papers" and Plaintiff wrote to the Court to notify it "of the continued retaliatory tactics of the Administrative Officials at Craggy and Catawba. Th[e] facility at Foothills has been compliant and has supplied [Plaintiff's] legal papers in a timely matter of fact." (Id.) Plaintiff "respectfully request[s] the Court to intervene in this matter to direct and instruct Defendants[]" (id.) to:

> 1. Cease any and all retaliatory tactics against Plaintiff. This includes but is not limited to any form of harassment. No frivolous unwarranted infractions. No unnecessary shake downs or any other form of harassment[.]
>
> 2. Do not delay, obstruct[,] or hinder Plaintiff in any way of meeting [the] Standard Track deadlines that [the Court] issued.
>
> 3. Do not return Plaintiff to Craggy Correctional or Catawba Correctional under any circumstances.
>
> 4. Transfer Plaintiff to Davidson Correctional or Southern Correctional.
>
> 5. Plaintiff meets all criteria for minimum custody. Plaintiff is 90 days or more infraction free, has only 12

16

custody points[,] and has completed more than 75% of [his] sentence.

(Id. at 3.)

In sum, Plaintiff seeks to sue (i) Wardens Reep and Maynor for failing to honor promises allegedly made at a meeting, at Catawba Correctional on August 5, 2021, regarding Plaintiff's illicit possession of a cell phone and for alleged disparate punishment of inmates possessing cell phones; (ii) Sgt. Lutz for failing to pack or otherwise document Plaintiff's possession of medical supplies for Plaintiff's leg injury when Sgt. Lutz, on Warden Reep's and Warden Maynor's orders, packed Plaintiff's possessions at Catawba Correctional after that meeting on August 5, 2021; and (iii) Warden Wilde and Warden McMahan, at Craggy Correctional, for, on and after September 1, 2021, (A) failing to provide materials that Plaintiff needs to properly litigate the instant lawsuit and, potentially, (B) ignoring or discarding Plaintiff's sick-call forms for a two-week period upon his arrival at Craggy Correctional. Plaintiff's claim against Sgt. Campbell involves allegations that Sgt. Campbell, on May 20, 2019, ignored Plaintiff's visibly swollen leg and overruled his request to stay at Forsyth Correctional Center that day to see a nurse, instead ordering Plaintiff to "'Get on the bus or get a write up.'" (Docket Entry 2 at 5.) Plaintiff's proposed claims against his proposed new defendants therefore do not arise from "the same transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 20(a)(2)(A), as his

17

claim against Sgt. Campbell. Thus, under Rule 20, Plaintiff cannot add these new defendants to his lawsuit against Sgt. Campbell. <u>See</u> Fed. R. Civ. P. 20(a)(2).

Even assuming that Plaintiff's claims met the requirements of Rule 20, the Court would still exercise its "wide discretion concerning the permissive joinder of parties," <u>Aleman</u>, 485 F.3d at 218 n.5, to deny Plaintiff's request to add these parties. Put simply, Plaintiff's request to add five different defendants involved in at least three separate alleged wrongs against Plaintiff more than two years after the incident with Sgt. Campbell "will result in substantial delay," justifying denial of the Motion. <u>Fuller v. Dixon</u>, No. 7:21-cv-40, 2021 WL 3909659, at *2 (E.D.N.C. Aug. 31, 2021) ("Joinder of [the plaintiff's] slightly overlapping but ultimately unrelated claims will result in substantial delay. Thus, the court denies the motion."). This remains particularly true given that all of the events that Plaintiff seeks to challenge through the Motion and Supplement occurred in Catawba and Buncombe Counties (<u>see, e.g.</u>, Docket Entry 22 (challenging events at Catawba Correctional and Craggy Correctional); Docket Entry 21-1 at 1 (reflecting "Asheville" address for Craggy Correctional)), outside the Middle District of North Carolina, <u>see</u> 28 U.S.C. § 113(c) (indicating that "Buncombe . . . [and] Catawba" comprise part of "[t]he Western District [of North Carolina]"). The fact that Plaintiff's proposed claims lack

18

a connection to the Middle District of North Carolina invites litigation over changing venue of this lawsuit to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a), which would further delay resolution of this lawsuit.

In addition, as alleged, the two claims that Plaintiff asserts that at least theoretically relate to his claim against Sgt. Campbell, insofar as they allegedly involve medical issues related to his leg, qualify as frivolous. To begin, Plaintiff contends that Sgt. Lutz "acted with deliberate and malicious intent when he discarded" the medicine that Plaintiff received from the hospital to treat his leg injury (Docket Entry 22 at 4), thereby committing "an Eighth Amendment violation of deliberate indifference that ignored [an] obvious duty to exercise care" (id. at 10). However, Plaintiff offers no factual allegations indicating that Sgt. Lutz acted maliciously in failing to pack or document Plaintiff's medical supplies. (See id. at 1-13; see also Docket Entry 24.) Instead, Plaintiff repeatedly asserts that Sgt. Lutz acted "negligent[ly]" and without "due care" (Docket Entry 22 at 4; see also, e.g., id. at 5) in handling Plaintiff's medical supplies.

Deliberate indifference to a serious medical need can state a claim under § 1983. Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). However, "[d]eliberate indifference is a very high standard — a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Because Plaintiff does not

19

offer any factual allegations showing that Sgt. Lutz acted maliciously rather than negligently in handling his supplies, Plaintiff fails to nudge his deliberate indifference claim against Sgt. Lutz across "the line between possibility and plausibility of entitlement to relief," Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Accordingly, Plaintiff's proposed claim against Sgt. Lutz cannot survive a Rule 12(b)(6) motion, see id., rendering it futile and Plaintiff's request to add such claim subject to denial under Rule 15(a), see Davison, 912 F.3d at 690.

Plaintiff further maintains that, in his first two weeks at Craggy Correctional, his "sick-call forms have been ignored or discarded" and, despite his requests to do so, Plaintiff did not see a doctor in that time period. (Docket Entry 22 at 12.) Similar to his allegations against Sgt. Lutz, Plaintiff does not include any factual allegations indicating that anyone acted intentionally, rather than negligently, in "ignor[ing] or discard[ing]" his sick-call forms. (Id.) In addition, Plaintiff does not allege that Warden Wilde and/or Warden McMahan possessed any knowledge of his sick-call forms, let alone that they personally ignored or discarded the forms or directed others to ignore or discard those forms. (See id.) Supervisors such as Warden Wilde and Warden McMahan cannot "be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676 (explaining that,

20

"[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Accordingly, to the extent that Plaintiff seeks to raise a claim against Warden Wilde and/or Warden McMahan related to the delay in his access to medical care upon arrival at Craggy Correctional, such claim qualifies as futile. See Davison, 912 F.3d at 690.

## CONCLUSION

Plaintiff's proposed claims against Sgt. Lutz and Wardens Maynor, McMahan, Reep, and Wilde fail to satisfy the requirements of Rule 20, would unduly delay resolution of this lawsuit, and/or qualify as futile.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 21) is **DENIED.**

This 26th day of April, 2022.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
