**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| REGINALD DEVORE CLINTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20cv1078 |
| | ) | |
| SGT. SLAGLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

This case comes before the Court on the "Summary Judgment Motion" (Docket Entry 42) ("Plaintiff's Summary Judgment Motion") filed by Reginald DeVore Clinton (the "Plaintiff"),[1] "Defendant's Motion for Summary Judgment Fed. R. Civ. P. 56" (Docket Entry 51) ("Defendant's Motion") filed by Travis Campbell (the "Defendant" or "Sgt. Campbell"), and Plaintiff's (i) "Motion for Expert Witness Testimony" (Docket Entry 45) (the "Expert Motion"), (ii) "Motion for Adequate Access" (Docket Entry 47) (the "Access Motion"), (iii) "Motion for Appointment of Counsel" (Docket Entry 49) (the "Appointment Motion"), and (iv) "Motion for Appointment of Person to Record and Take Depositions" (Docket Entry 60) (the "Deposition Motion"). For the reasons that follow, the Court (i) should deny Plaintiff's Summary Judgment Motion and Defendant's Motion

---

[1] For legibility reasons, this Opinion uses standardized capitalization and spelling and omits the word "the" in front of "Plaintiff" and "Defendant" in all quotations from the parties' materials.

(collectively, the "Summary Judgment Motions"), (ii) will deny the Expert Motion and Deposition Motion (collectively, the "Witness Motions"), and (iii) will grant the Access Motion and Appointment Motion (collectively, the "Legal Assistance Motions") as specified herein.

<u>**BACKGROUND**</u>

Plaintiff, a convicted state prisoner (Docket Entry 2 (the "Complaint") at 4),[2] initiated this lawsuit under 42 U.S.C. § 1983 against "Sgt. Slagle" and "Sgt. Campbell" at "Forsyth Correctional [Center]" (<u>id.</u> at 2), for allegedly violating Plaintiff's "[r]ight to receive immediate medical attention when medical issue is reported" and "[c]ruel and unusual punishment by forcing attendance to school while visible swelling and redness of leg is apparent" (<u>id.</u> at 3) for incidents occurring between 8:45 p.m. on May 19, 2019, and 7:15 a.m. on May 21, 2019 (<u>id.</u> at 5), "[a]t Forsyth Correctional [Center]" (<u>id.</u> at 4). More specifically, (as previously documented by the undersigned Magistrate Judge) the Complaint alleges:

[On May 19, 2019, Plaintiff] "woke up feeling nauseous, shaking with cold chills and experiencing pain in [his] lower left leg." [He] reported this to [Sgt.] Slagle at 8:45 p.m[.] and she replied that these "sym[p]toms were not an emergency" and instructed Plaintiff to fill out a regular sick call. Plaintiff did so and laid back down. He awakened the next morning "with visible swelling in [his] leg and at 7:08 am [he]

_____

2 Docket Entry page citations utilize the CM/ECF footer's pagination.

2

reported these sym[p]toms to [Sgt.] Campbell and showed
him [the] leg and told [Sgt. Campbell Plaintiff] needed
to remain on campus to see the nurse.  However, [Sgt.]
Campbell . . . told Plaintiff to "'Get on the bus or get
a write up.'"  [Accordingly, Sgt.] Slagle violated
Plaintiff's rights by not acting after being informed of
Plaintiff's need for medical attention and . . . [Sgt.]
Campbell violated [Plaintiff's] rights by forcing him "to
attend school by threatening 'get on the bus or get a
write-up' while visible swelling and redness o[n
Plaintiff's] leg was obvious to any untrained eye."  The
Complaint is not specific about the events that occurred
next or the cause of the issues with Plaintiff's leg.
However, the problem . . . resulted in a 21-day stay in
the hospital, "[p]ermanent damage and discoloration on
[Plaintiff's] lower left leg," "acute kidney disease that
now requires medication," wound care, hose, and medical
socks and shoes.  Plaintiff also reports "[c]onstant
swelling and fluid on [his] lower left leg."

(Docket Entry 3 at 3-4 (certain brackets in original) (citations
omitted) (quoting Docket Entry 2 at 4-5).)  As relief for
Plaintiff's claims, the Complaint seeks "[a]ctual damages,"
described as the "cost of supplies and medical in [the] future,"
and "punitive damages," described as "loss of future earning
potential and medical deficiency caused by damage to leg." (Docket
Entry 2 at 5.)

The Complaint further reflects that, at the time of its
filing, Plaintiff had a pending North Carolina Industrial
Commission case regarding Sgt. Slagle's and Sgt. Campbell's alleged
actions, which "[was] waiting on [a] trial date."  (Id. at 9.)
Following an evidentiary hearing in March 2021, see Clinton v.
North Carolina Dep't Public Safety, No. TA-27986, slip op. at 1
(N.C. Indus. Comm'n May 10, 2021), available at

3

https://ic.nc.gov/livelink/livelink.exe?func=ll&objId=347536&objA
ction=viewversionheader&vernum=1 (last visited Nov. 3, 2022), the
Industrial Commission found that Sgt. Campbell breached his "non-
delegable duty to ensure [Plaintiff, as an] inmate[] under [Sgt.
Campbell's] control[,] w[as] provided medical attention," id. at
7.[3]  The Industrial Commission further found that "the negligence
of S[gt.] Campbell proximately caused Plaintiff pain and suffering
in the form of ongoing symptoms of chills, nausea, vomiting, pain,
and swelling of the lower left leg." Id. at 8.  However, the
Industrial Commission concluded that "[t]he cause of Plaintiff's
lower left leg cellulitis, rhabdomyolysis, and kidney injury is a
complicated medical question in which competent expert testimony is
required," which Plaintiff apparently failed to present. Id.; see
id. at 6. Accordingly, the Industrial Commission awarded Plaintiff
$400 "for pain and suffering resulting from the failure of S[gt.]
Campbell to arrange for Plaintiff to receive medical attention for
his symptoms." Id. at 8.

Meanwhile, reviewing the Complaint under 28 U.S.C. § 1915A,
the Court permitted Plaintiff to maintain a claim for deliberate
indifference to a serious medical need against Sgt. Campbell, but
dismissed Plaintiff's claim against Sgt. Slagle for failure to

---

3    Conversely, the Industrial Commission "conclude[d] that
Plaintiff ha[d] not met his burden of proving by a preponderance of
the evidence that S[gt.] Slagle's failure to call a medical
emergency constituted a negligent breach of the duty owed to
Plaintiff." Id.

4

state a claim upon which relief may be granted. (See Docket Entry 6 at 1; see also Docket Entry 3 at 1-5.) Thereafter, the Court (per the undersigned Magistrate Judge) entered a Scheduling Order specifying that, inter alia, "the parties shall complete discovery by [March 3, 2022]." (Text Order dated June 23, 2021.) On January 31, 2022, Plaintiff submitted a "Motion to Compel," which requested, inter alia, that the Court "subpoena Plaintiff's expert witnesses" and that the "discovery period end[] as scheduled and [a] trial date issue[]." (Docket Entry 25 at 1.) In pertinent part, the Court (per the undersigned Magistrate Judge) deemed the motion unripe and moot, explaining:

> [D]espite [Plaintiff's supporting brief's] (mistaken) suggestion (through its cryptic reference to [an a]ttachment) that Defendant bore some duty to help Plaintiff secure depositions of four non-parties (two doctors and two nurses), [Plaintiff's] Brief makes clear that Plaintiff does not seek subpoenas for depositions of those (or any other witnesses), but rather requests trial subpoenas for those four "expert" witnesses. Finally, the discovery period has now passed without any extension . . . . Under these circumstances, [the m]otion's request for a court order maintaining the discovery deadline is moot [and] its requests for court orders setting a trial date and subpoenaing witnesses for trial are premature (and thus unripe) . . . . If the parties ultimately do not file any timely dispositive motions and/or if any timely filed dispositive motions do not resolve all issues in this case, the Clerk will set the case for trial, at which time Plaintiff may file a proper motion for issuance of subpoenas (which shall include certification that Plaintiff can and will provide funds necessary to pay the required witness fees and mileage, which his pauper status does not cover).

(Text Order dated Apr. 26, 2022.)

The parties thereafter filed the Summary Judgment Motions. (See Docket Entries 42, 51.) Plaintiff initially failed to verify his summary judgment materials. (See Docket Entries 42, 43.) However, after Defendant asserted that "Plaintiff provides no evidence," but "merely offers allegations in this matter" (Docket Entry 52 at 3), Plaintiff verified under penalty of perjury "all claims, motions[,] and statements [that he] submitted" (Docket Entry 56-1 at 16; accord Docket Entry 60 at 2). Accordingly, as relevant to the Summary Judgment Motions, the record reflects the following:

First, Sgt. Campbell has averred that he worked for the North Carolina Department of Public Safety (the "NCDPS") from 2012 until January 2021. (Docket Entry 53-1, ¶ 2.) While employed at the NCDPS, Sgt. Campbell reportedly "was a member of the custody staff, not the medical staff." (Id., ¶ 4.) His affidavit further related:

> As a member of custody staff, [Sgt. Campbell] did not have a role in facilitating the requests for medical care. [Sgt. Campbell] cannot [sic] discuss medical conditions with any offenders. [Sgt. Campbell] had no involvement with the sick call process. Sick calls were handled by medical staff only. [Sgt. Campbell] advised all offenders to fill out a sick call request and place it in the sick call secured box that only medical staff have access to.

(Id., ¶ 5.)

Sgt. Campbell continued:

"On the morning of May 20, 2019, [Sgt. Campbell] was the officer-in-charge ('OIC') at Forsyth [Correctional Center]." (Id., ¶ 6.) "Between 6:30 am and 8:00 am that morning, as OIC, [Sgt. Campbell] managed approximately 130 offenders who were departing the facility either for work with the Department of Transportation, other work release jobs, or the Dobson School." (Id., ¶ 7.) "Plaintiff was assigned to attend the Dobson School that morning." (Id., ¶ 8.) "At approximately 6:45 am that morning, two transfer buses were loaded with offenders, and [Sgt. Campbell] was stationed in the sergeant's office." (Id., ¶ 9.) "[Sgt. Campbell] oversaw the departures, but [he] was not one of the correctional staff stationed at the buses making sure that the offenders got on their buses." (Id., ¶ 10.)

"If an offender did not arrive at the bus for loading, the officers at the buses would call [Sgt. Campbell] over the radio." (Id., ¶ 11.) "When [Sgt. Campbell] was told over the radio that an offender was not at the Dobson bus, [Sgt. Campbell] was to make an announcement to the effect of, 'Offender [name], report to Dobson bus; they are waiting for you; either report or receive a possible disciplinary.'" (Id., ¶ 12 (final set of brackets in original).) "An offender who fails to report to work or school may be charged with a Class B Disciplinary Offense pursuant to NCDPS Policy and Procedure B.0200, Offender Disciplinary Procedures, specifically:

7

(B12) Leave, quit without authorization, fail to report, or neglect to adhere to approved schedules for community-based programs." (Id., ¶ 13.)

"[Sgt. Campbell] ha[s] no training in the field of medicine." (Id., ¶ 14.) "However, if [Sgt. Campbell] had seen Plaintiff's leg on May 20, 2019, and if it was obviously swollen, [Sgt. Campbell] would not have required [Plaintiff] to go to the Dobson School on May 20, 2019. Rather, [Sgt. Campbell] would have had [Plaintiff] report immediately to [the] medical unit." (Id., ¶ 15.) "Also, if Plaintiff had appeared obviously ill on May 20, 2019, [Sgt. Campbell] would not have required [Plaintiff] to go to the Dobson School on that day. Rather, [Sgt. Campbell] would have had [Plaintiff] report immediately to [the] medical unit." (Id., ¶ 16.) "[Sgt. Campbell] do[es] not know if Plaintiff actually filled out a sick call on May 19, 2019, but if he did, then by the next day, [the] camp nurse would have called [Sgt. Campbell] to have Plaintiff held in the prison facility for that day." (Id., ¶ 17.) "The camp nurse did not call [Sgt. Campbell] to have Plaintiff held in the prison facility for May 20, 2019, and there was otherwise no medical hold on Plaintiff on May 20, 2019." (Id., ¶ 18.) "[Sgt. Campbell] did not know of, nor did [he] purposely ignore, any serious medical or other needs of Plaintiff." (Id., ¶ 19.)

8

By contrast, Plaintiff's evidence reflects:

Around 8:45 p.m. on Sunday, May 19, 2019, "Plaintiff began experiencing chills, nausea, pain and swelling in his lower left leg after scraping/cutting his left leg on a rusted bathroom door while getting out of the shower." (Docket Entry 43 at 2.) Plaintiff reported these symptoms to Sgt. Slagle, who directed him to complete a regular sick call request. (Docket Entry 2 at 5; Docket Entry 43 at 2.) Plaintiff complied with this directive "and laid back down in pain shaking with cold chills" (Docket Entry 2 at 5). (See also Docket Entry 43 at 2.)

On Monday, May 20, 2019, Plaintiff was scheduled to attend the Dobson School (see Docket Entry 56-1 at 6, 11), "located approximately 45 miles from Forsyth Correctional [Center]" (Docket Entry 43 at 1). "[I]nmates are transported [to the Dobson School] via bus on a daily basis." (Id.) Medical staff do not work on weekends and do not arrive at Forsyth Correctional Center until 8 a.m. on weekdays, by which time all buses for the Dobson School have left the facility. (Docket Entry 56-1 at 11.) As such, "it [would have been] impossible for medical staff to call Defendant to put a medical hold on Plaintiff prior to 8 a.m. on [Monday,] May 20, 2019." (Id.) Regardless, under NCDPS policy, non-medical "custodial staff are trained and instructed to contact next level management authority" to "give them the symptoms of the medical complaint reported [by an inmate] and allow next level managing

9

authority [to] decide if immediate outside care is necessary when there is no unit medical provider on-site." (Id. at 6.)

On May 20, 2019, Plaintiff awoke with visible swelling in his leg. (Docket Entry 2 at 5.) Around 7 a.m. (see id.), "[a]fter being paged to report to the bus for school, Plaintiff reported to [the] bus visibly limping and asked the officer to be excused to see medical." (Docket Entry 56-1 at 5.) The officer told Plaintiff that "[he] ha[d] to ask the OIC." (Id. (internal quotation marks omitted).)

Plaintiff then walked to the Sergeant's Office, "visibly limping," and "show[ed] Defendant both legs, the left leg visibly swollen larger than the right, red and irritated." (Id.) Further, Plaintiff "verbally report[ed] 'feeling nauseous, shaking with cold chills[,] and experiencing pain in [his] lower left leg.'" (Id.) Plaintiff "additionally informed Sgt. Campbell that [Plaintiff] had submitted a sick call form for this matter." (Id.) He also told Sgt. Campbell that "[he] needed to remain on campus to see the nurse," but "Sgt. Campbell said[,] 'Get on the bus or get a write up.'" (Docket Entry 2 at 5; see also Docket Entry 43 at 2 (explaining that, after Plaintiff showed Defendant his injury and informed Defendant that Plaintiff "was experiencing chills, nausea, pain, and swelling in [his] lower [left leg and] asked to be excused from school to see medical," Defendant "ordered Plaintiff to 'get on the bus for school or get a write-up'" and "Plaintiff

10

complied with [the] order"); Docket Entry 56-1 at 5 ("Sgt. Campbell informed [Plaintiff] that [he] did not have a medical hold on [him] and that [he] could 'get on the bus or get a write-up.'").)  At the Industrial Commission hearing, another inmate similarly testified to witnessing "Plaintiff walk to the Sgt. Office visibly limping, hear[ing] Plaintiff ask[] Defendant to remain at [the] facility, hear[ing] Defendant tell Plaintiff [to] 'get on the bus or get a write-up,'" and seeing Plaintiff's "legs on the bus, the left leg visibly larger, swollen, red and irritated." (Docket Entry 56-1 at 8.)

Also at the Industrial Commission hearing, "Sgt. Kennedy testified that it is protocol at Forsyth Correctional [Center] to excuse sick inmates from attending the Dobson School until cleared by medical." (Id. (internal quotation marks omitted).)  This protocol exists because of a "lack of medical providers at the Dobson School and the amount of time it takes to transport an inmate back to Forsyth [Correctional Center if] the[ inmate] require[s] medical attention" (id. (internal quotation marks omitted)).  Accord Clinton, slip op. at 4.  Defendant's refusal to excuse Plaintiff from attending the Dobson School to receive medical treatment caused "Plaintiff to endure additional and unnecessary pain and suffering in the form of ongoing symptoms of chills, nausea, vomiting, pain[,] and swelling of [his] lower left leg." (Docket Entry 56-1 at 7; accord Docket Entry 43 at 8.)

11

Plaintiff continued experiencing symptoms on May 20, 2019, including vomiting at lunch at the Dobson School. (See Docket Entry 43 at 3.) Sgt. Kennedy instructed Plaintiff to see medical before he returned to the Dobson School. (Id.; see also Docket Entry 56-1 at 8 (indicating that "it is protocol . . . to excuse sick inmates from attending the Dobson School until 'cleared by medical'" (certain internal quotation marks omitted)).) However, when Plaintiff returned to Forsyth Correctional Center, "medical was gone for the day." (Docket Entry 43 at 3.) The following day, Sgt. Campbell again paged Plaintiff to report to the bus for the Dobson School, but Sgt. Kennedy intervened and "instructed Plaintiff to remain on campus to see medical." (Id.)

When Nurse Meadows arrived at the facility on May 21, 2019, she examined Plaintiff. (See id.) She reported that "Plaintiff's lower left leg was swollen with pitting edema and was hot to touch and painful." (Id.) "After conferring with a physician, Nurse Meadows arranged for Plaintiff to be transported to the emergency department at Novant Health Forsyth Hospital." (Id.) "Plaintiff was admitted to [the hospital on May 21, 2019,] with severe lower left leg cellulitis and rhabdomyolysis, resulting in acute kidney injury[,] and remained hospitalized until [June 10,] 2019." (Id.) Plaintiff continues to take medicine to reduce his leg swelling, wears compression socks and hose, and experiences areas of skin discoloration on his leg. (Id.) In sum, Defendant's actions

"caused Plaintiff to endure [his] symptoms for more than 24 additional hours, which resulted in [his] extended hospitalization," and "allowed [the] infection to enter into Plaintiff's bloodstream," causing various adverse results. (<u>Id.</u> at 8.)

**DISCUSSION**

**I. Summary Judgment Motions**

**A. Summary Judgment Standards**

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'"

13

<u>Miller v. Leathers</u>, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979)).  If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 959 (4th Cir. 1996).

Nevertheless, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248.  Moreover, "the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." <u>Lewis v. Eagleton</u>, No. 4:08-cv-2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (citing <u>Baber v. Hospital Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992)), <u>aff'd</u>, 404 F. App'x 740 (4th Cir. 2010); <u>see also</u> <u>Pronin v. Johnson</u>, 628 F. App'x 160, 161 (4th Cir. 2015) (explaining that "[m]ere conclusory allegations and bare denials" or the nonmoving party's "self-serving allegations unsupported by any corroborating evidence" cannot defeat summary judgment).  Further, factual allegations in a complaint or other court filing constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury.  <u>See</u> <u>Reeves v. Hubbard</u>, No.

1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

"[W]here affidavits present conflicting versions of the facts which require credibility determinations, summary judgment cannot lie." Raynor v. Pugh, 817 F.3d 123, 130 (4th Cir. 2016) (internal quotation marks omitted). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007); see also, e.g., Love v. Beasley, 788 F. App'x 935, 937 (4th Cir. 2020) (concluding, on review of summary judgment decision, "that the district court did not err in finding that [a defendant] did not punch [the plaintiff] as alleged, because video of the incident confirms [the defendant's] denial"). Notably, though, in Scott,

> the [United States] Supreme Court was faced with a videotape of the incident in question that "utterly discredited" the plaintiff's account, rendering it a "visible fiction." 550 U.S. at 380–81. As between a videotape of undisputed authenticity, id. at 378, and the plaintiff's story, the Court held, the videotape should prevail. Where the nonmoving plaintiff's account is "blatantly contradicted by the record" so that "no reasonable jury could believe it," it should not be adopted by a court ruling on a motion for summary judgment. Id. at 380.
>
> As [the United States Court of Appeals for the Fourth Circuit] ha[s] clarified, Scott is the exception, not the rule. It does not "abrogate the proper summary judgment analysis, which in [resolving defendants'

15

summary judgment motions in] qualified immunity cases 'usually means adopting . . . the plaintiff's version of the facts.'" *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott*, 550 U.S. at 378). That standard continues to apply in the face of "documentary evidence" that lends support to a government official's account of events, *id.*, or even makes it "unlikely" that the plaintiff's account is true, *United States v. Hughes*, 606 F.3d 311, 319–20 (6th Cir. 2010) (holding that *Scott* does not apply to photographs rendering plaintiff's account "unlikely"). Summary judgment is proper under *Scott* only when there is evidence — like the videotape in *Scott* itself — of undisputed authenticity that shows some material element of the [opposing party's] account to be "blatantly and demonstrably false." *Blaylock v. City of Phila.*, 504 F.3d 405, 414 (3d Cir. 2007) (refusing to extend *Scott* to evidence in form of police photographs that fail to depict "all of the defendant's conduct and all of the necessary context"); *see also Witt*, 633 F.3d at 277 (holding *Scott* inapplicable to soundless video that does not capture key disputed facts).

Harris v. Pittman, 927 F.3d 266, 275–76 (4th Cir. 2019) (ellipsis in original) (parallel citations omitted).

## B. Deliberate Indifference Standard

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). To establish a constitutional claim regarding his medical care, Plaintiff must show that Defendant "acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

A medical need qualifies as serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that

16

even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks omitted). A defendant displays deliberate indifference where he possesses knowledge of the risk of harm to an inmate and knows that "his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Id. (emphasis and internal quotation marks omitted); see also Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) ("To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" (brackets in original) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994))).

"[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. "It requires that a [defendant] actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted). A plaintiff can satisfy this standard by showing "that a [defendant] knew of a substantial risk from the very fact that the risk was obvious." Scinto, 841 F.3d at 226 (internal quotation marks omitted). In addition, "'[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs.'" Id. (brackets in original) (quoting

17

Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837).

## A. Plaintiff's Summary Judgment Motion

According to Plaintiff, Defendant violated the Eighth Amendment and acted with deliberate indifference "when he ordered Plaintiff to board the bus and go to school on May 20, 2019[,] after being informed [that] Plaintiff was sick and had placed a sick call request" (Docket Entry 43 at 5) and being "show[n Plaintiff's] leg injury" (id. at 6). (See also id. at 11 ("Defendant displayed reckless and callous indifference to Plaintiff's medical need by ordering Plaintiff to get on the bus for school or get a write up after Plaintiff showed Defendant his injury[ and] informed Defendant of [his] sickness and the fact that Plaintiff had turned in a sick call to see medical.").) Plaintiff further asserts that Defendant's affidavit does not preclude summary judgment in Plaintiff's favor, on the theory that "Defendant's version [of events] 'is blatantly contradicted by the record, so that no reasonable jury could believe it.'" (Docket Entry 56-1 at 9 (quoting Scott, 550 U.S. at 380).) For instance, Plaintiff contends that "[i]t is impossible for Defendant to definitely state, 'The camp nurse did not call me' and 'there was no medical hold on Plaintiff on May 20, 2019,' but . . . not recall seeing Plaintiff or Plaintiff's leg," as the phrasing of his affidavit suggests. (Id. (noting affidavit's "if I had seen, if it

18

was obviously swollen, and I would have had him report immediately to our medical unit" language (internal quotation marks omitted)).) Plaintiff further emphasizes that, during the grievance process following the events in question, Defendant stated that he did "not recall this incident that took place on [May 20, 2019]." (Id. at 4; see also Docket Entry 2 at 7 (indicating that, during grievance process, "[b]oth officers claimed to have no recollection of events").) Per Plaintiff, "[i]t is impossible for Defendant Campbell to 'not recall this incident on [August 1, 2019], less than 90 days after [the] incident[,] but remember with clarity[] the same incident on June 2, 2022, [the date he signed the affidavit (see Docket Entry 53-1 at 4),] over three (3) years later." (Docket Entry 56-1 at 4.)

Whatever persuasive force these arguments may hold at trial, they fail to justify summary judgment. In this regard,

> [t]he evidence offered in this case is simply not on equal fooling with the type of evidence that documented the incident with the level of certainly and reliability as the videotape[] in *Scott* . . . . Where, as here, the parties offer dueling affidavits with substantially different accounts, *Scott* instructs that[,] "in such posture, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." 550 U.S. at 378 (citation and internal quotation marks omitted).

Stout v. Reuschling, No. CIV.A. 14-1555, 2015 WL 1461366, at *10 (D. Md. Mar. 27, 2015). Here, neither party has provided "undisputed evidence which 'blatantly contradict[s]' [the other party's] account of the events which occurred on [May 20], 2019 at

19

[Forsyth Correctional Center]." York v. Capers, No. CV 1:19-2885, 2020 WL 4435188, at *2 (D.S.C. Aug. 3, 2020) (first set of brackets in original). Accordingly, the record does not justify summary judgment in Plaintiff's favor, necessitating denial of Plaintiff's Summary Judgment Motion. See id.

## B. Defendant's Motion

For his part, Defendant jointly moved for summary judgment and responded in opposition to Plaintiff's Summary Judgment Motion, all prior to Plaintiff verifying his assertions. (See, e.g., Docket Entry 52 at 1 ("[Defendant] submits this memorandum of law (i) in support of his motion for summary judgment and (ii) in opposition to the motion for summary judgment of Plaintiff . . . ."); Docket Entry 56-1 at 16 ("verify[ing] under penalty of perjury that all claims, motions and statements submitted by Plaintiff are true and correct").) Thus, Defendant initially argued that Defendant's affidavit provides the "undisputed (and undisputable) evidence" in this matter. (Docket Entry 52 at 12; accord id. at 1, 4, 6, 8-13, 15.) After Plaintiff's verification, Defendant changed his argument, contending instead that

> [t]he material statements in Plaintiff's Response consist of conjecture and speculation, not facts. First, Plaintiff writes that "[i]t is impossible for [Sgt.] Campbell to 'not recall this incident' on 08-01-2019, less than 90 days after incident but remember with clarity, the same incident on June 2, 2022, over three (3) years later." [D.E. 56-1, p. 4] This is pure speculation. Plaintiff's conclusory statement regarding what is "impossible" regarding [Sgt.] Campbell's memory is not probative.

20

Next, Plaintiff makes the conclusory statement that requiring Plaintiff to get on the bus "created an 'unreasonable' risk of danger to Plaintiff which resulted in extended hospitalization of Plaintiff." [D.E. 56-1, p. 7] Again, this is mere speculation. There is no evidence that Plaintiff's hospitalization, or the length thereof, was caused or was at all affected by getting on the bus that morning. In fact, Plaintiff admits that he did not actually become ill until hours after interacting with [Sgt.] Campbell. [D.E. 43, p. 3] Moreover, Plaintiff does not dispute that there was no medical hold, nor does he dispute that the camp nurse never called [Sgt.] Campbell to tell him to keep Plaintiff off the bus. [D.E. 56-1, p. 5] Rather, Plaintiff merely offers more speculation, specifically that (i) the lack of medical hold must be because it was a Monday morning, and (ii) [Sgt.] Campbell somehow secretly knew that there could not possibly be a medical hold on a Monday morning. [D.E. 56-1, p. 11] This speculation does not raise a genuine issue of material fact, and Plaintiff cannot avoid summary judgment with speculation. *Bouchat[ v. Baltimore Ravens Football Club, Inc.]*, 346 F.3d [514,] 522 [(4th Cir. 2003)].

(Docket Entry 58 at 2-3 (footnote omitted) (certain brackets in original).) Defendant's contentions miss the mark.

Viewed in the light most favorable to Plaintiff, the record reflects, inter alia:

On the night of Sunday, May 19, 2019, "Plaintiff began experiencing chills, nausea, pain and swelling in his lower left leg after scraping/cutting his left leg on a rusted bathroom door while getting out of the shower." (Docket Entry 43 at 2.) After completing a sick call request, Plaintiff "laid back down in pain shaking with cold chills." (Docket Entry 2 at 5.) On Monday, May 20, 2019, Plaintiff was scheduled to attend the Dobson School (see Docket Entry 56-1 at 6, 11), "located approximately 45 miles from

21

Forsyth Correctional [Center]" (Docket Entry 43 at 1). Inmates travel to the Dobson School on a daily basis via bus (see id.) and the Dobson School lacks medical providers (see Docket Entry 56-1 at 8). Around 7 a.m. that morning, Plaintiff awoke with visible swelling in his leg. (See Docket Entry 2 at 5.) Visibly limping, Plaintiff asked the officer at the bus to excuse him from school attendance so that he could see medical providers at Forsyth Correctional Center that day. (See Docket Entry 56-1 at 5.) The officer told Plaintiff that "[he] ha[d] to ask the OIC." (Id. (internal quotation marks omitted).) Defendant served as OIC that morning. (See id. at 2.)

Plaintiff walked to the Sergeant's Office, "visibly limping," and "show[ed] Defendant both legs, the left leg visibly swollen larger than the right, red and irritated." (Id. at 5.) Plaintiff then "verbally report[ed] 'feeling nauseous, shaking with cold chills[,] and experiencing pain in [his] lower left leg.'" (Id.) Plaintiff "additionally informed Sgt. Campbell that [Plaintiff] had submitted a sick call form for this matter." (Id.) Plaintiff also told Sgt. Campbell that "[Plaintiff] needed to remain on campus to see the nurse," but "Sgt. Campbell said[,] 'Get on the bus or get a write up.'" (Docket Entry 2 at 5; see also Docket Entry 43 at 2 (explaining that, after Plaintiff showed Defendant his injury and informed Defendant that Plaintiff "was experiencing chills, nausea, pain, and swelling in [his] lower [left leg and] asked to be

22

excused from school to see medical," Defendant "ordered Plaintiff to 'get on the bus for school or get a write-up'" and "Plaintiff complied with [the] order").) Defendant's refusal to excuse Plaintiff from attending the Dobson School to receive medical treatment caused "Plaintiff to endure additional and unnecessary pain and suffering in the form of ongoing symptoms of chills, nausea, vomiting, pain[,] and swelling of [his] lower left leg." (Docket Entry 56-1 at 7; accord Docket Entry 43 at 8.)

Plaintiff continued experiencing chills, nausea, pain, and swelling (see Docket Entry 43 at 8), and he vomited at lunch at the Dobson School (see id. at 3, 8). Sgt. Kennedy instructed Plaintiff to see medical before he returned to the Dobson School. (Id. at 3; see also Docket Entry 56-1 at 8 (indicating that "it is protocol . . . to excuse sick inmates from attending the Dobson School until 'cleared by medical'" (certain internal quotation marks omitted)).) However, when Plaintiff returned to Forsyth Correctional Center, "medical was gone for the day." (Docket Entry 43 at 3.) The following day, a nurse at the facility examined Plaintiff, finding that his "lower left leg was swollen with pitting edema and was hot to touch and painful." (Id.)

Forsyth Correctional Center medical personnel "arranged for Plaintiff to be transported to the emergency department at Novant Health Forsyth Hospital," where "Plaintiff was admitted [that day] . . . with severe lower left leg cellulitis and rhabdomyolysis,

23

resulting in acute kidney injury[,] and remained hospitalized until [June 10, 2019]. (Id.)[4] Plaintiff continues to take medicine to reduce his leg swelling, wears compression socks and hose, and experiences areas of skin discoloration on his leg. (Id.) Per Plaintiff, Defendant's actions "caused Plaintiff to endure [his] symptoms for more than 24 additional hours, which resulted in [his] extended hospitalization," and "allowed [the] infection to enter into Plaintiff's bloodstream," causing various adverse results. (Id. at 8.)

This evidence extends beyond "pure speculation" (Docket Entry 58 at 2), "conclusory statement[s]" (id.), and "conjecture" (id.). The Court should therefore reject Defendant's contention that the undisputed evidence justifies summary judgment in his favor.[5]

_____

    4   Cellulitis is "a bacterial infection of the skin and subcutaneous tissue marked by discomfort and redness, swelling, and warmth of the infected area." Scott v. Carpenter, 24 F. App'x 645, 647 (8th Cir. 2001). "If not treated promptly, cellulitis can quickly spread through the body and cause sepsis, 'a potentially fatal systemic infection.'" Bunche v. United States, No. 17-6190, 2018 WL 4959029, at *1 (6th Cir. June 20, 2018) (quoting Newmann v. United States, 938 F.2d 1258, 1260 (5th Cir. 1991)). In turn, "[r]habdomyolysis is the breakdown of muscle tissue leading to the release of muscle fiber contents into the blood. These substances often cause kidney damage." Sykes v. Kijakazi, No. 2:20cv18, 2022 WL 854822, at *8 n. 19 (W.D. Va. Mar. 21, 2022).

    5   Defendant also contends that Plaintiff pursues solely a negligence claim rather than an eighth-amendment deliberate indifference claim. (See Docket Entry 58 at 3-4.) To the contrary, Plaintiff asserts that

        Defendant displayed reckless and callous indifference to
        Plaintiff's medical need by ordering Plaintiff to get on
                                                    (continued...)

24

Defendant next argues that "Plaintiff cannot establish that he had a serious medical need on the morning of May 20, 2019 that was so obvious that even a lay person like Campbell would easily recognize the necessity for a doctor's attention." (Docket Entry 52 at 8 (emphasis omitted).) More specifically, Defendant states:

> First, [Sgt.] Campbell testifies that he was not aware of a serious medical need of Plaintiff on the morning of May 20, 2019. Plaintiff's leg was not obviously swollen to [Sgt.] Campbell, nor did Plaintiff seem obviously ill. Additionally, the camp nurse did not call [Sgt.] Campbell to have Plaintiff held in the prison facility for May 20, 2019, and there was otherwise no medical hold on Plaintiff on May 20, 2019. There is no evidence to dispute this testimony.
>
> Second, even Plaintiff's unsworn statements demonstrate that any serious medical needs did not become obvious until lunch time on May 20, 2019. Plaintiff admits that he spent all morning at the Dobson School before he became obviously ill (when he vomited during lunch).
>
> Therefore, it is undisputed that Plaintiff can establish no **obvious** serious medical need the morning of

---

5(...continued)
the bus for school or get a write up after Plaintiff showed Defendant his injury, informed Defendant of [his] sickness and the fact that Plaintiff had turned in a sick call to see medical. When Defendant ordered Plaintiff to get on the bus for school or get a write-up, Defendant was reckless and callous in giving Plaintiff this order and exhibited a deliberate indifference to Plaintiff's obvious and serious medical need[, as] any layman could see that this injury required medical attention.

(Docket Entry 43 at 11.) Defendant's negligence argument therefore does not justify summary judgment.

25

> May 20, 2019.  For that reason alone, Plaintiff's claims
> against [Sgt.] Campbell fail as a matter of law.

(Id. at 9-10 (internal citations omitted) (emphasis and certain brackets in original).)

As discussed above, viewed in the light most favorable to Plaintiff, the record reflects that, on the morning in question (and in Defendant's presence), Plaintiff exhibited a visible limp and a visibly swollen, red, and irritated left leg.  He also reported pain, chills, and nausea to Defendant and informed Defendant of a pending sick call request.  "Viewing the facts in the light most favorable to Plaintiff, as we must, Plaintiff was suffering from a serious, visible medical need at the time [Defendant] responded to [Plaintiff's request to be excused from school to obtain medical care]."  Scinto, 841 F.3d at 231.

A reasonable jury could find that Plaintiff suffered from a "serious medical condition 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Id. at 232 (quoting Iko, 535 F.3d at 241); accord, e.g., Gomez v. Davis, No. 7:20-cv-726, 2022 WL 777064, at *6-7 (W.D. Va. Mar. 11, 2022) (finding that "visibly swollen and discolored" hand and "complain[ts] of severe pain" qualified as objective medical need in deliberate indifference claim against non-medical correctional officer); Hairston v. Allen, No. 7:19cv328, 2020 WL 1066342, at *6 (W.D. Va. Mar. 5, 2020) (finding that allegations of the plaintiff's "readily observable" "pain, swelling, and limp" from

26

his "injured foot and leg" evidenced "an obvious need for medical treatment" in deliberate indifference claim against deputies (internal quotation marks omitted)); <u>Scott v. Clarke</u>, 64 F. Supp. 3d 813, 824 (W.D. Va. 2014) ("Cynthia Scott's severely swollen leg associated with her blood clot, Ms. Richardson's open sores on her left leg, and Rebecca Scott's severely deformed toenail are all conditions that even a lay person would recognize as meriting a doctor's attention."). Indeed, Defendant himself tacitly conceded as much. (<u>See</u> Docket Entry 53-1, ¶¶ 14-15 (averring that, although he "ha[d] no [medical] training," if he had seen Plaintiff with an "obviously swollen" leg, Defendant "would not have required [Plaintiff] to go to the Dobson School," but instead "would have had him report immediately to [the] medical unit").) The Court should therefore reject Defendant's assertion that Plaintiff failed to establish an objectively serious medical need.

Defendant further contends that Sgt. "Campbell was not deliberately indifferent." (Docket Entry 52 at 10 (emphasis omitted).) Defendant's arguments in support of this contention rely exclusively on Defendant's affidavit, without engagement with Plaintiff's evidence. (<u>See</u> <u>id.</u> at 10-12.) In ruling on Defendant's Motion, however, the Court must construe the evidence in the light most favorable to Plaintiff. <u>See, e.g.</u>, <u>Scinto</u>, 841 F.3d at 231. Viewed from that perspective, the evidence establishes that, confronted with Plaintiff's obvious, serious

27

medical need, Defendant refused Plaintiff's request to remain at Forsyth Correctional Center to obtain medical assistance and instead ordered him to go to the Dobson School (which lacked medical providers).

Under the circumstances, a factfinder could reasonably conclude that Defendant acted with deliberate indifference to Plaintiff's serious medical needs. See, e.g., Gomez, 2022 WL 777064, at *7 ("conclud[ing] that [the plaintiff's] allegations plausibly suggest that [the defendant guard] was aware that [the plaintiff] had suffered a painful injury and that he intentionally declined to assist [the plaintiff] in obtaining medical treatment," and observing that "[s]uch inaction on the part of correctional officials, in the face of an obvious need for medical care, provides a reasonable basis for finding deliberate indifference"); Hairston, 2020 WL 1066342, at *6 ("Viewing the allegations in the light most favorable to [the plaintiff] as the court must at this stage of the litigation, the court concludes that [the plaintiff] has adequately alleged that the [d]efendant [d]eputies were aware that [the plaintiff] had suffered a painful injury, and that they 'intentionally ignored the situation and refused to seek medical assistance.' Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986). Such inaction on the part of jail officials, in the face of an obvious need for medical treatment, provides a reasonable basis for finding deliberate indifference.").

As such, the Court should reject Defendant's request for summary judgment on this claim.[6]  Finally, Defendant maintains that, "[a]s a matter of law, Plaintiff is not entitled to compensatory damages or punitive damages from [Sgt.] Campbell." (Docket Entry 52 at 12 (emphasis omitted).)  According to Defendant, Plaintiff has "admit[ted] that he cannot prove causation" without expert testimony and thus "he is not entitled to compensatory damages." (Id. at 13.)  Defendant further contends that "there is no evidence that [Sgt.] Campbell was reckless or callously indifferent to Plaintiff's allegedly serious medical need," as "the undisputed evidence demonstrates that [Sgt.] Campbell was not deliberately indifferent," and "[t]hus, Plaintiff's punitive damages claims must necessarily fail." (Id. at 13-14.)  These contentions lack merit.

First, as Plaintiff noted (see, e.g., Docket Entry 56-1 at 12), he has pursued expert witness testimony regarding "the cause of [his] rhabdomyolysis, kidney injury and the lasting effects and permanency of these medical issues" (id.).  However, Plaintiff has also asserted that Defendant's actions "caused Plaintiff pain and suffering in the form of ongoing symptoms of chills, nausea, vomiting, pain and swelling of lower left leg." (Id.; accord

_____

6  Moreover, because Defendant's qualified immunity argument rests entirely on the premise that "Plaintiff has not demonstrated a violation of a constitutional right" (Docket Entry 52 at 15; see id. at 14-15), the Court should reject Defendant's "alternative reason" (id. at 15) for granting summary judgment to Defendant.

29

Docket Entry 43 at 10.) "No expert testimony is needed to establish causation [with respect to the latter circumstance] because it is apparent to a layman that [Defendant's alleged refusal to excuse Plaintiff from attending the Dobson School to receive medical aid] could cause [Plaintiff to continue experiencing such symptoms]." Krell v. Queen Anne's Cnty., No. CV 18-0637, 2019 WL 6131076, at *3 (D. Md. Nov. 19, 2019); see also Scinto, 841 F.3d at 230 (explaining that, "when the seriousness of an injury or illness and the risk of leaving that injury or illness untreated would be apparent to a layperson, expert testimony is not necessary to establish a deliberate indifference claim").) Defendant's compensatory damages argument thus does not warrant relief at this stage of the proceedings.

As for Defendant's punitive damages contention, it bears noting that the items Plaintiff identifies as "punitive damages," namely "loss of future earning potential and medical deficiency caused by damage to leg" (Docket Entry 2 at 5), actually qualify as compensatory damages. See, e.g., Smith v. Wade, 461 U.S. 30, 52, 54 (1983) (explaining that compensatory damages "compensate [a] plaintiff for his loss" whereas "[p]unitive damages are awarded in the jury's discretion 'to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future'" (final set of brackets in original)). Additionally, Defendant's argument on this front construes the

evidence in the light most favorable to him rather than Plaintiff, which the Court cannot do in resolving Defendant's Motion.

In any event:

> A plaintiff may recover punitive damages on a Section 1983 claim when the defendant acts with reckless or callous indifference to the federally protected rights of others. The callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on [a] § 1983 claim. Accordingly, if the evidence suffices for a Section 1983 claim, it generally suffices for punitive damages. See Cooper[ v. Dyke], 814 F.2d [941,] 948 [(4th Cir. 1987)] (explaining that "the propriety of a guilty verdict on the [Section 1983 claim] thus supports the punitive damage award as well").

Simmons v. Corizon Health, Inc., No. 1:14cv730, 2016 WL 11786319, at *2 (M.D.N.C. Dec. 7, 2016) (certain internal quotation marks and citations omitted) (certain brackets in original); see also, e.g., Morris v. Bland, 666 F. App'x 233, 240 (4th Cir. 2016) (concluding that the defendants' "deliberate indifference to [the plaintiff's] serious medical needs satisfies the requirement that their conduct involve reckless or callous indifference to [the plaintiff's] federally-protected rights," justifying punitive damages). As discussed above, on the current record, a factfinder could reasonably conclude that Defendant acted with deliberate indifference to Plaintiff's serious medical needs. Thus, Plaintiff's punitive damages request survives summary judgment.

For all of the foregoing reasons, the Court should deny Defendant's Motion and Plaintiff's deliberate indifference claim against Defendant in his individual capacity should proceed to

trial. Conversely, any official-capacity claim (see Docket Entry 2 at 2) should be dismissed for failure to state a claim, see 28 U.S.C. § 1915(e)(2)(B), because Defendant's employer, NCDPS, as an arm of the State of North Carolina, does not constitute a person for damages claims under Section 1983, see Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

## II. Witness Motions

Next, through the Expert Motion, Plaintiff seeks to obtain "[e]xpert witness testimony from [his] attending physicians at Novant Health Hospital." (Docket Entry 46 at 3; accord Docket Entry 45 at 1.) It remains unclear whether Plaintiff wants such testimony at or in advance of trial (see, e.g., Docket Entry 46 at 3 (referencing "expert witness testimony from attending physicians . . . to present expert testimony during [the] jury trial"); see also Docket Entry 26 (proposing to "[s]ubpoena Plaintiff's expert witnesses or depose them in a fashion that would not delay trial")), but Plaintiff has separately sought "an order appointing someone . . . to take the depositions of Plaintiff's expert witnesses from Novant Health Forsyth Hospital" (Docket Entry 60 at 1). In conjunction with the latter request, Plaintiff filed interrogatories addressed to Defendant, other inmates, and certain medical personnel, dated as sent in September 2022. (See id. at 3-10.)

32

The Scheduling Order set March 3, 2022, as the discovery deadline. (See Text Order dated June 23, 2021.) A scheduling order "may be modified only for good cause and with the [Court's] consent." Fed. R. Civ. P. 16(b)(4). "[T]he touchstone of 'good cause' under [Federal Rule of Civil Procedure] 16(b) is diligence." Marcum v. Zimmer, 163 F.R.D. 250, 255 (S.D. W. Va. 1995); see also Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). Here, Plaintiff filed the Expert Motion and Deposition Motion in May 2022 and October 2022, respectively. (See Docket Entry 45 at 1; Docket Entry 60 at 2.) Because Plaintiff filed these motions after the Scheduling Order's deadline for discovery, he must establish "excusable neglect" to receive relief. See Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time[ ] . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). "'Excusable neglect' is not easily demonstrated, nor was it intended to be." Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996).

Although Plaintiff characterized the Deposition Motion "as the third attempt to formulate a preliminary deposition schedule" (Docket Entry 60 at 3), he has not elucidated either attempts he

33

took to obtain the requested depositions and answers to the proffered interrogatories during the discovery period or reasons for his delay in (implicitly) requesting an extension of the discovery deadline (see generally Docket Entries 45, 46, 60). As such, Plaintiff has shown neither diligence nor excusable neglect. Furthermore, as the Court (per the undersigned Magistrate Judge) previously has explained, to the extent that the Expert Motion seeks to secure the testimony of the identified witnesses at trial, it both remains "premature" given the pending dispositive motions and fails to "certif[y] that Plaintiff can and will provide funds necessary to pay the required witness fees and mileage, which his pauper status does not cover" (Text Order dated Apr. 26, 2022). (See Docket Entries 45, 46.) The Court will therefore deny the Witness Motions.

### III. Legal Assistance Motions

In the Legal Assistance Motions, Plaintiff indicates that, in part due to a change in NCDPS mail services, he lacks access at his current facility to legal resources necessary to pursue his claims in this action. (See Docket Entry 48 at 1-7; Docket Entry 50 at 1.) According to Plaintiff, "[w]ithout appointment of counsel or transfer to a facility with [a] tablet containing Westlaw free services, Plaintiff's access to [the] courts is reduced to nonexistent." (Docket Entry 50 at 1.) Thus, Plaintiff seeks transfer to an NCDPS facility more conducive to legal research and

34

preparation, "[a]ppointment of counsel" (id. at 2), and "[a]ny other relief the Court deems appropriate" (Docket Entry 48 at 7). (See id.; Docket Entry 50 at 2.) Particularly given the lack of a viable official-capacity claim, the Court should not direct NCDPS to transfer Plaintiff between facilities. However, in light of the recommended denial of the Summary Judgment Motions, the Court will direct the Clerk to attempt to locate counsel willing to represent Plaintiff at trial pursuant to the Court's pro bono representation program. See Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968) (noting court's discretion to appoint counsel for in forma pauperis litigants like Plaintiff).

## CONCLUSION

Material factual disputes preclude summary judgment for either party on Plaintiff's individual-capacity, deliberate indifference claim. Plaintiff has not established grounds for his deposition and expert testimony requests; however, as this case should proceed to trial, an effort to locate pro bono representation for Plaintiff should commence.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Summary Judgment Motion (Docket Entry 42) and Defendant's Motion (Docket Entry 51) be denied, but that any official-capacity claim be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim.

**IT IS ORDERED** that (i) the Expert Motion (Docket Entry 45) and Deposition Motion (Docket Entry 60) are **DENIED** and (ii) the Access Motion (Docket Entry 47) and Appointment Motion (Docket Entry 49) are **GRANTED** insofar as the Clerk shall attempt to locate counsel willing to represent Plaintiff pursuant to the Court's pro bono representation program.

This 9th day of November, 2022.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
